UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL J. MADIGAN | No. 22 CR 115-1<br><br>Judge John R. Blakey |

**MOTION OF THE UNITED STATES FOR ENTRY OF**
**<u>FORFEITURE MONEY JUDGMENT ORDER</u>**

MORRIS PASQUAL
Acting United States Attorney

<u>/s/ *Sarah E. Streicker*    </u>
DIANE MacARTHUR
SARAH E. STREICKER
JULIA K. SCHWARTZ
Assistant United States Attorneys
219 South Dearborn Street
Fifth Floor
Chicago, Illinois 60604
(312) 353-5300

The UNITED STATES OF AMERICA, by MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, moves for entry of a forfeiture money judgment order as to defendant Michael J. Madigan in the amount of $3,140,688.13, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

## PROCEDURAL HISTORY

The superseding indictment charges defendants Michael Madigan and Michael McClain with racketeering conspiracy, bribery, and other offenses. R. 37.

Forfeiture Allegation Two gave notice that the government would seek forfeiture of "any property, real and personal, which constitutes or is derived from proceeds traceable to" the offenses charged in Counts Two through Twenty-Three. R. 37 at 116-117. Forfeiture Allegation Two seeks a money judgment in the amount of $2,857,337, pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c).[1]

On October 9, 2024, a jury trial began before this Court. R. 224. Before a verdict was reached, the parties stipulated to facts relevant to the Court's forfeiture determination. R. 306. The parties agreed that the Court would determine the amount of any forfeiture judgment and that "[b]eyond the evidence and testimony presented at trial and the summary chart attached to this filing (Exhibit A), the parties do not intend to present additional witnesses or evidence to the Court

---

[1] Because Forfeiture Allegation One relates to Count One, and the jury did not reach a verdict on Count One, the government does not seek forfeiture under Forfeiture Allegation One.

1

regarding forfeiture." R. 306 at 2. On February 12, 2025, the jury returned a partial verdict. The jury's verdict as to defendant Madigan is summarized below. R. 331.

| Count | Statute | Description | Verdict |
|---|---|---|---|
| 1 | 18 U.S.C. § 1962(d) | Racketeering conspiracy | No Verdict |
| 2 | 18 U.S.C. § 371<br>18 U.S.C. § 2 | Conspiracy: ComEd | Guilty |
| 3 | 18 U.S.C. § 666(a)(1)(B)<br>18 U.S.C. § 2 | Bribery: ComEd Board seat | Not Guilty |
| 4 | 18 U.S.C. § 666(a)(1)(B)<br>18 U.S.C. § 2 | Bribery: ComEd Payments to Zalewski 2018 | Guilty |
| 5 | 18 U.S.C. § 1952(a)(3)<br>18 U.S.C. § 2 | Use of a Facility to Promote Unlawful Activity: ComEd | Guilty |
| 6 | 18 U.S.C. § 666(a)(1)(B)<br>18 U.S.C. § 2 | Bribery: ComEd Payments to Olivo, Nice, and Zalewski 2019 | Guilty |
| 7 | 18 U.S.C. § 1952(a)(3)<br>18 U.S.C. § 2 | Use of a Facility to Promote Unlawful Activity: ComEd | Not Guilty |
| 8 | 18 U.S.C. § 1343<br>18 U.S.C. § 1346 | Wire fraud: State Board | Guilty |
| 9 | 18 U.S.C. § 1343<br>18 U.S.C. § 1346 | Wire fraud: State Board | Guilty |
| 10 | 18 U.S.C. § 1343<br>18 U.S.C. § 1346 | Wire fraud: State Board | Guilty |
| 11 | 18 U.S.C. § 666(a)(1)(B) | Bribery: State Board | Not Guilty |
| 12 | 18 U.S.C. § 1952(a)(3)<br>18 U.S.C. § 2 | Use of a Facility to Promote Unlawful Activity: State Board | Guilty |
| 13 | 18 U.S.C. § 1952(a)(3)<br>18 U.S.C. § 2 | Use of a Facility to Promote Unlawful Activity: State Board | Guilty |
| 14 | 18 U.S.C. § 1952(a)(3)<br>18 U.S.C. § 2 | Use of a Facility to Promote Unlawful Activity: State Board | Guilty |
| 15 | 18 U.S.C. § 1951(a)<br>18 U.S.C. § 2 | Attempted extortion of Union West | Not Guilty |
| 16 | 18 U.S.C. § 1952(a)(3)<br>18 U.S.C. § 2 | Use of a Facility to Promote Unlawful Activity: Union West | Not Guilty |
| 17 | 18 U.S.C. § 1952(a)(3)<br>18 U.S.C. § 2 | Use of a Facility to Promote Unlawful Activity: Union West | Not Guilty |
| 18 | 18 U.S.C. § 1952(a)(3)<br>18 U.S.C. § 2 | Use of a Facility to Promote Unlawful Activity: Union West | Not Guilty |
| 19 | 18 U.S.C. § 1343<br>18 U.S.C. § 1346 | Wire fraud: Chinatown Parcel | No Verdict |

| 20 | 18 U.S.C. § 1343<br>18 U.S.C. § 1346 | Wire fraud: Chinatown Parcel | No Verdict |
|----|----|----|----|
| 21 | 18 U.S.C. § 666(a)(1)(B)<br>18 U.S.C. § 2 | Bribery: Chinatown Parcel | No Verdict |
| 22 | 18 U.S.C. § 1952(a)(3)<br>18 U.S.C. § 2 | Use of a Facility to Promote Unlawful Activity: Chinatown Parcel | No Verdict |
| 23 | 18 U.S.C. § 371<br>18 U.S.C. § 2 | Conspiracy: AT&T | No Verdict |

A mistrial was declared as to the counts for which the jury did not reach a unanimous verdict, including all counts against defendant McClain. R. 331, 332.

As a result of the convictions as to Counts 2, 4, 5, 6, 8, 9, 10, 12, 13, and 14, the property named in Forfeiture Allegation Two of the superseding indictment is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c).

## FACTUAL BACKGROUND

As relevant to the Court's forfeiture determination, Madigan, McClain and others arranged for associates of Madigan (including his political allies and individuals who performed political work for Madigan) to obtain jobs, contracts, and monetary payments associated with those jobs from Commonwealth Edison ("ComEd"), in exchange for Madigan's official action on ComEd legislation.

### Payments from ComEd to Madigan "Subcontractors"

ComEd paid a total of $1,302,750 to Madigan allies Frank Olivo, Raymond Nice, Edward Moody, Michael Zalewski, and Edward Acevedo between 2011 and 2019. R. 306 at 2-4; GX1520.[2] These men were paid indirectly, through phony

---

[2] References to "GX" are exhibits admitted by the government at trial, and the references to "Tr." are relevant pages of the trial transcript.

3

agreements with intermediary lobbyists – including Jay Doherty and Michael McClain – who were also close to Madigan. GX1520. The payments were structured this way to hide the true nature of the arrangement, which was to pay Madigan allies to do nothing. The evidence established that the sham subcontractors were paid for 8 years in return for virtually no work. *See, e.g.,* GX74, GX156, GX230, GX270, Tr. 4258, 4426 (testimony of Edward Moody); Tr. 2444, 2449-50, 2497, 2452-56, 2515, 2535 (testimony of Fidel Marquez); Tr. 3617-18 (testimony of Patrick Comiskey); Tr. 3605, 3630, 3687, 3746, 7367 (testimony of FBI agents).

Madigan controlled when the payments started and stopped and the amounts of payment. *E.g.*, GX48, GX267, GX135, GX73, GX74, GX75, GX77, GX1618. As the evidence established, and as the jury found, the subcontractor payments were paid in exchange for Madigan's official action.

### Payments from ComEd to Reyes Kurson

ComEd's payments totaling $1,837,938.13 to Reyes Kurson (R. 306 at 2-4; GX1520 at 22), were also bribes paid in exchange for Madigan's official action on ComEd legislation, as the jury's finding on Count 2 and the trial evidence proves.

Madigan caused ComEd to retain Reyes Kurson, the law firm run by Victor Reyes, a valuable fundraiser and ally of Madigan's. *E.g.,* GX196. Reyes Kurson first entered into a contract with ComEd on October 25, 2011 (GX1071), just one day before Madigan voted on the veto override for ComEd's major Smart Grid legislation on October 26, 2011. (GX807). Madigan pushed for this contract, year after year, even though ComEd did not have enough appropriate work for Reyes Kurson to perform.

4

Tr. 1189, 1191, 1193. McClain went so far as to threaten ComEd that reducing the firm's hours would provoke an adverse reaction from Madigan (GX522), which demonstrates the intended exchange of payments to Reyes Kurson for official action.

## FORFEITURE SOUGHT BY THE GOVERNMENT

The United States requests that this Court enter a forfeiture money judgment order against defendant Madigan in the amount of $3,140,688.13,[3] forfeiting all right, title, and interest defendant Madigan has in the foregoing property for disposition according to law. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2, the United States requests that the terms and conditions of this forfeiture money judgment order be made part of the sentence imposed against Madigan.

The forfeiture amount represents the money ComEd paid to Madigan's associates as so-called "subcontractors" between 2011 and 2019 and to Reyes Kurson between 2012 and 2019. These amounts, which are summarized below, have been stipulated by the parties. R. 306 at 2-4.

---

[3] The forfeiture amount sought by the government is higher than what is alleged in the superseding indictment because additional financial records related to Reyes Kurson were obtained after the superseding indictment was returned, which reflected additional payments to Reyes Kurson by ComEd. The government has removed from its forfeiture demand amounts related to conduct for which the jury did not render a guilty verdict, including payments made to Juan Ochoa by ComEd.

5

| Gov. Exhibit | Description | Total |
|---|---|---|
| 1520 at pp. 1, 21 | ComEd Payments to "Subcontractors" (2011-2019)<br><br>Frank Olivo $368,000<br>Raymond Nice $415,000<br>Edward Moody $354,750<br>Edward Acevedo $120,000<br>Michael Zalewski $45,000 | $1,302,750.00 |
| 1520 at p. 22 | ComEd Payments to Reyes Kurson (2012-2019) | $1,837,938.13 |
| | | **$3,140,688.13** |

## ARGUMENT

### I. APPLICABLE LAW

Title 18, United States Code, Section 981(a)(1)(C) provides for the civil forfeiture of "any property" that "constitutes or is derived from proceeds traceable to" a "specified unlawful activity," as defined in Sections 1956(c)(7) and 1961(1). "Specified unlawful activity" includes Travel Act (§ 1952), wire fraud (§ 1343), and bribery (§ 666) offenses, including those alleged in Counts 2, 4, 5, 6, 8, 9, 10, 12, 13, and 14. *See* 18 U.S.C. §§ 1956(c)(7)(D); 1961(1); *United States v. Baker*, 227 F.3d 955, 968 (7th Cir. 2000). Under 28 U.S.C. § 2461(c), "[i]f the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case. . ."

A court may impose an *in personam* forfeiture money judgment for the amount of unlawful proceeds. *See, e.g., United States v. Nejad*, 933 F.3d 1162, 1165 (9th Cir. 2019); *Baker*, 227 F.3d at 970.

Pursuant to Federal Rule of Criminal Procedure 32.2(b)(2)(B), unless doing so is impractical, the Court must enter the forfeiture money judgment order sufficiently

6

in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant at sentencing.

The government must establish its right to forfeiture by a preponderance of the evidence. *United States v. Patel*, 131 F.3d 1195, 1200 (7th Cir. 1997). The Court's forfeiture determination must be based on evidence or information "accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). The government may rely on trial evidence and additional evidence to establish forfeitability. Fed. R. Crim. P. 32.2(b)(1)(B). The Federal Rules of Evidence do not apply to forfeiture hearings held before a judge. *See United States v. Smith*, 770 F.3d 628, 641 (7th Cir. 2014).

II. **MADIGAN SHOULD BE ORDERED TO FORFEIT THE TOTAL PAYMENTS MADE BY COMED TO THE SUBCONTRACTORS AND REYES KURSON.**

As the trial evidence established, and as the jury found, ComEd's payments to the ghost "subcontractors" and Reyes Kurson were bribes.

The amount of those bribe payments "constitutes or is derived from proceeds traceable to" the offenses of conviction. 18 U.S.C. § 981(a)(1)(C). In cases involving "illegal goods, illegal services, [and] unlawful activities," the term "proceeds" is defined as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A). Based on this provision, the entire amount paid to the subcontractors and Reyes Kurson should be forfeited, because it was the product of unlawful activity, namely bribery. *See United States v. Percoco*, 13 F.4th 180, 203 (2d Cir. 2021), *rev'd and remanded on other grounds*, 598 U.S. 319 (2023) (applying § 981(a)(2)(A) in a

7

case involving bribes disguised as jobs; "where the criminal conduct cannot ever be conducted legally, the gross proceeds of the crime are forfeitable"); *United States v. Nicolo*, 597 F. Supp. 2d 342, 347 (W.D.N.Y. 2009) (applying § 981(a)(2)(A) to kickback scheme, noting "it is irrelevant, for forfeiture purposes, whether a defendant convicted of fraud in connection with a kickback scheme actually performed any of the services that he contracted to perform . . ."); *United States v. Zai*, 932 F. Supp. 2d 824, 826 (N.D. Ohio 2013) (applying § 981(a)(2)(A) in case involving loans secured through bribery); *United States v. Ritacco*, No. 10-CR-00697 JAP, 2012 WL 6626093, at *2 (D.N.J. Dec. 19, 2012), *aff'd sub nom. United States v. Gartland*, 540 F. App'x 136 (3d Cir. 2013).

The entire amount that ComEd paid the subcontractors and Reyes Kurson should be forfeited, because the payments would not have been made absent the bribery conspiracy. *See Percoco*, 13 F.4th at 203 (affirming forfeiture of amount paid to defendant's wife as consultant payment, because "she would not have received the job absent the bribery scheme"). As ComEd General Counsel Thomas O'Neill testified, he did not have any work lined up that Reyes Kurson could do when Madigan's first hiring demand was made in 2011. Tr. 1180. After that, O'Neill continued to face challenges finding appropriate work for Reyes Kurson. Tr. 1189, 1191, 1193.

Because the payments were bribes, the entire amounts paid to the subcontractors and Reyes Kurson are "proceeds" subject to forfeiture. *See United States v. Venturella*, 585 F.3d 1013, 1017-18 (7th Cir. 2009) (forfeiture under

8

§ 981(a)(1)(C) included "the total amount gained by the crime or criminal scheme," not just the amounts specified in the counts of conviction).

### III. FORFEITURE IS PROPER EVEN THOUGH MADIGAN DID NOT DIRECTLY RECEIVE THE BRIBE PAYMENTS.

Madigan may argue that amounts paid to his associates, rather than directly to him, are not subject to forfeiture. As discussed below, Madigan should forfeit these amounts, because he controlled and benefited from the bribes.

The fact that Madigan arranged for the bribes to be paid to third parties does not bar forfeiture, because § 981(a)(1)(C) "does not condition forfeiture liability upon obtaining – either directly or indirectly – property from the proceeds of the criminal activity. (That property, could for instance, be shunted to other persons as gifts and still result in civil forfeiture liability)." *United States v. Tartaglione*, 815 F. App'x 648, 652 (3d Cir. 2020).[4] The "statutory definition of 'proceeds' of a criminal activity includes costs saved through the commission of a criminal offense as indirect gains to the defendant." *United States v. Wong*, No. CR 11-00691 3 DDP, 2014 WL 6976080, at *2 (C.D. Cal. Dec. 9, 2014) ("proceeds" of unlawful activity included amounts defendant paid his coconspirators "for illicit services—namely, the undervaluation,

---

[4] By comparison, in *United States v. Genova*, 333 F.3d 750, 762 (7th Cir. 2003), the Seventh Circuit stated that comp time payments made to city workers for performing political work for the defendant, the mayor, were not subject to forfeiture under RICO's forfeiture provision. The court observed that "[t]he money that the City paid to employees for political services is not forfeitable from Genova, who did not receive a penny and thus has no 'proceeds.'" *Id*. *Genova* involved RICO's forfeiture provision, which unlike § 981(a)(1)(C), expressly requires the defendant obtain the proceeds (18 U.S.C. § 1963(a)(3)). Moreover, the comp time awards were not bribes; the Seventh Circuit limited application of RICO to the defendant's acts of mail fraud. *Id*. at 759 ("[w]hether Genova's RICO conviction is tenable depends on the mail fraud convictions . . ."). The payments at issue in this case were bribes paid by ComEd to Madigan's close allies and are subject to forfeiture under § 981(a)(1)(C).

9

misclassification, and in-bond diversion of shipments from China," which allowed him to avoid liabilities equal to that amount).

Here, the evidence amply supports a finding that the payments to allies like the subcontractors and Reyes Kurson indirectly benefited Madigan, even though Madigan did not line his own pockets with ComEd's funds. The payments to Madigan's allies benefited Madigan, as they ensured the continued loyalty of a critical donor and other allies and ensured Madigan's political workers (like Nice and Moody) would continue to go door-to-door. These payments saved Madigan from having to spend money from his own political committees.

Indeed, Ed Moody testified that Madigan told him that the money Moody received from ComEd was connected to Moody's political work. Specifically, Madigan told Moody: "if I leave my politics . . . I'm going to lose the contract." Tr. 4326. And again in 2018, when Moody expressed his concern that he had not been doing work for ComEd, Madigan told him: "You have nothing to worry about. What you're doing right now . . . is what I want, it's what [John Bradley] wants, it's what ComEd wants." Tr. 4426. Thus, ComEd was paying Moody for his work *for Madigan*, which meant Madigan did not have to pay him for all of that work.

Professor Dick Simpson testified that precinct captains were "critical" to marshalling votes within a traditional ward organization. Tr. 2212. Indeed, Madigan admitted on cross examination that he helped precinct captains get jobs with the "hope and expectation" that they continue to do political work for free for him. Tr.

10

9109; *see also* GX1. The evidence demonstrates that the payments to Madigan's subcontractors provided a massive benefit to Madigan.

Defendants may argue that the Supreme Court's decision in *Honeycutt v. United States*, 581 U.S. 443 (2017), impacts this case. There, the Court reversed a forfeiture judgment finding a manager of a hardware store who did not own the store jointly and severally liable with the owner for all proceeds of a drug conspiracy operated out of the store. The Court held that the forfeiture provision applicable to narcotics cases, 21 U.S.C. § 853(a)(1), does not impose joint and several liability on each member of a conspiracy. *Id.* at 448-50. Rather, because § 853(a)(1) is limited to property that a defendant "obtained, directly or indirectly" from the offense giving rise to the forfeiture, the government could not seek forfeiture from a defendant who did not personally benefit from illegal drug sales. *Id.* at 454. In *Honeycutt*, the Supreme Court was concerned that low-level defendants could be required to forfeit *all* proceeds of larger drug distribution schemes, even when the low-level dealer did not acquire or benefit from those proceeds. *Id.* at 448-49.

Courts are divided as to whether *Honeycutt* applies to the civil forfeiture statute, 18 U.S.C. § 981, and the Seventh Circuit has not addressed the question.[5]

---

[5] Some appellate courts have held that *Honeycutt* applies to § 981. *See United States v. Thompson*, 990 F.3d 680, 689 (9th Cir. 2021) ("*Honeycutt* does apply to 18 U.S.C. § 981(a)(1)(C)."); *United States v. Gjeli*, 867 F.3d 418, 428 (3d Cir. 2017).

Other courts have declined to apply *Honeycutt* to statutes other than § 853. For example, the Sixth Circuit held that *Honeycutt* does not apply to § 981(a)(1)(C), because "[u]nlike § 853(a)(1), 18 U.S.C. § 981(a)(1)(C) does not contain the phrase 'the person obtained,' which was the linchpin of the Supreme Court's decision in *Honeycutt*." *United States v. Sexton*, 894 F.3d 787, 799 (6th Cir. 2018). *See also United States v. Agrawal*, 97 F.4th 421, 444 (6th Cir. 2024); *United States v. Asomani*, 7 F.4th 749, 754 (8th Cir. 2021); *United States v. Cingari*, 952 F.3d 1301, 1306 (11th Cir. 2020); *United States v. Peithman*,

11

Even assuming *Honeycutt* applies to § 981, forfeiture of the entire amounts paid to the "subcontractors" and Reyes Kurson is appropriate. The *Honeycutt* Court's concern over holding low-level conspirators responsible for all a conspiracy's unlawful proceeds is not present in cases, like this one, where the defendant directed, benefited from, and actively participated in the unlawful scheme.

As one district court observed, "*Honeycutt* bases its reasoning on drawing a distinction between a mastermind who controls the criminal operation and a lower figure who only has access to and control over the smaller amount of tainted property directly in his possession." *United States v. Bangiyev*, 359 F. Supp. 3d 435, 440 (E.D. Va. 2019). Based on this distinction, "lower courts have declined to apply *Honeycutt* in cases where the defendant held a position of control in the criminal operation." *Id.* (collecting cases). *See, e.g., United States v. Cingari*, 952 F.3d 1301, 1306 (11th Cir. 2020) (*Honeycutt* does not bar liability where defendant "played a [ ] significant role in the crime, [and] the evidence demonstrated that he personally worked on [a large portion of] fraudulent applications"); *United States v. Kim*, No. 4:20CR47 (DJN), 2021 WL 3514745, at *5 (E.D. Va. Aug. 10, 2021) ("[T]he general consensus among the Courts of Appeals since *Honeycutt* concludes that *Honeycutt's* general rule does not extend to the leaders or 'masterminds' of a conspiracy and, therefore, the leader may be held liable for the entire proceeds of the conspiracy.").

---

917 F.3d 635 (8th Cir. 2019); *Roy v. United States,* No. 1:17-cv-05217, 2018 WL 6696598, *21 (N.D. Ill. Dec. 20, 2018) (Feinerman, J.) (holding that *Honeycutt* does not apply to § 982(a)(7), which, like § 981(a)(1)(C), does not contain the phrase "person obtained.").

Although the Seventh Circuit has not addressed this question, many courts after *Honeycutt* have permitted recovery from the head of a criminal organization, even if he did not directly receive all of the illegal proceeds. *See, e.g., United States v. Leyva*, 916 F.3d 14, 30 (D.C. Cir. 2019) (district court did not err in ordering forfeiture of $529 million in revenue obtained by drug operation that defendant "personally oversaw," even though defendant did not personally acquire that amount); *U.S. Sec. & Exch. Comm'n v. Metter*, 706 F. App'x 699, 702 n.2 (2d Cir. 2017) (*Honeycutt* did not apply because defendant "ha[d] control of [the criminal organization] . . . and thus could control the distribution of proceeds"); *United States v. Kenner*, 443 F. Supp. 3d 354, 363 n.8 (E.D.N.Y. 2020) (defendant "was the mastermind of the wire fraud conspiracy and, therefore, is jointly and severally liable for all the proceeds of that offense, including its various objectives"); *United States v. Gioeli*, No. 08-cr-240 (BMC), 2019 WL 6173421, at *3 (E.D.N.Y. Nov. 20, 2019) ("*Honeycutt* based its rationale on drawing distinctions between a mastermind who controlled the criminal operation and a lowly figure who only had access to and control over a small fraction of the tainted property directly in his possession.").[6]

Madigan is "closely akin to the hypothetical . . . mastermind described in *Honeycutt*," and thus *Honeycutt* does not foreclose recovery. *United States v. Ward*, No. 2:16-CR-6, 2017 WL 4051753, at *3 (W.D. Mich. Aug. 24, 2017), *report and recommendation adopted,* 2017 WL 3981160 (W.D. Mich. Sept. 11, 2017), *aff'd*, 757

---

[6] The Ninth Circuit has rejected the leader or mastermind exception to *Honeycutt*. *See United States v. Thompson*, 990 F.3d 680, 691 (9th Cir. 2021); *United States v. Villegas*, No. 22-10335, 2024 WL 510310, at *1 (9th Cir. Feb. 9, 2024).

13

F. App'x 507 (6th Cir. 2019). The trial evidence established that Madigan requested that ComEd start paying his associates and approved of paying them as ghost subcontractors in 2011. *E.g.*, GX48, GX267, GX135. And in 2018, when the last subcontractor (Michael Zalewski) was added, Madigan still controlled the hiring of the so-called "subcontractors" by ComEd. *E.g.*, GX73, GX74, GX75, GX77, GX1618 (series of communications on May 16, 2018 related to Zalewski). The entire bribery scheme was designed to satisfy Madigan. *E.g.*, GX270 (Doherty observing that the subcontractors were paid "to keep Mike Madigan happy"); GX267 (McClain, stating "We had to hire these guys because Mike Madigan came to us. That's, it's that simple."). Madigan controlled the payments from ComEd to his allies.

Furthermore, there is ample evidence for the Court to find that Madigan exercised control over the funds paid to the subcontractors and Reyes Kurson. Madigan (not ComEd) controlled when the subcontractor payments started and stopped (*e.g.,* GX48, 267, 247, 248, 564), the amounts (*e.g.,* GX75), and even extended the offers to the subcontractors (*e.g.,* GX77, GX1618).

Like with the subcontractors, the evidence at trial established that Madigan controlled the Reyes Kurson contract. *E.g.,* GX539 (McClain reporting, "I JUST met with him and told him that it was not done yet but that I thought it would be accomplished this week"); GX533. Like with the subcontractors, Madigan (through McClain) approved the terms of the Reyes Kurson contract renewal. *E.g.,* GX649.

14

Because Madigan controlled the payments to the subcontractors and Reyes Kurson and indirectly benefited from the payments, the total amount paid is subject to forfeiture. *See Wong*, 2014 WL 6976080, at *2; *Metter*, 706 F. App'x at 702 n.2.

### IV. THE COURT SHOULD PERMIT RECOVERY OF SUBSTITUTE ASSETS.

The United States requests that the Court order the forfeiture of any other property belonging to Madigan, in the event funds to satisfy the money judgment, as a result of his act or omission: (a) cannot be located upon the exercise of due diligence; (b) have been transferred or sold to, or deposited with, a third-party; (c) have been placed beyond the jurisdiction of the Court; (d) have been substantially diminished in value, or (e) have been commingled with other property which cannot be divided without difficulty. *See* 21 U.S.C. § 853(p); 28 U.S.C. § 2461(c); Fed R. Crim P. 32.2.

The government respectfully requests the Court authorize the Attorney General or her designated representatives to conduct discovery to identify or locate property subject to forfeiture, including substitute assets, and to seize property ordered forfeited upon such terms and conditions as set forth by the Court. *See* 21 U.S.C. § 853; 28 U.S.C. § 2461(c); Fed R. Crim P. 32.2.

### CONCLUSION

For the reasons set forth above, the United States requests that this Court enter a personal money judgment against defendant Madigan in the amount of $3,140,688.13, and enter a forfeiture money judgment order against defendant Madigan, in accordance with the draft forfeiture money judgment order that is submitted herewith.

15

Respectfully submitted.

MORRIS PASQUAL
Acting United States Attorney

/s/ *Sarah E. Streicker*
DIANE MacARTHUR
SARAH E. STREICKER
JULIA K. SCHWARTZ
Assistant United States Attorneys
219 South Dearborn Street
Fifth Floor
Chicago, Illinois 60604
(312) 353-5300